UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

No. 2:08-CV-0366-FCD-KJM

     Plaintiff,

  v.                       MEMORANDUM AND ORDER

COMERICA BANK,

     Defendant.

_____/

----oo0oo----

    This matter is before the court on defendant Comerica Bank's ("defendant") motion to dismiss the complaint of plaintiff Travelers Casualty and Surety Company of America ("plaintiff") for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, defendant requests this court abstain from adjudicating plaintiff's claims in light of pending state court claims brought

against defendant.[1]

After considering the memoranda filed by the parties, and for the reasons stated herein, the court STAYS this action pursuant to the doctrine of abstention set forth in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).[2]

**BACKGROUND**

This action is one of at least four involving an improvement project that failed to proceed as planned at a 156-acre lot near Rocklin, California. The background relevant to this action is summarized as follows:

**1.   The Rocklin Project**

In December of 2005, plaintiff entered into an indemnity agreement involving Dunmore Croftwood, LLC ("Dunmore")[3] under which plaintiff agreed to issue construction bonds on behalf of Dunmore guaranteeing the performance and payment obligations of Dunmore for improvement projects it undertook. (Def.'s RJN, filed March 26, 2008, Ex. 4.) In return, plaintiff was entitled

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[2] As such, the court does not reach the merits of defendant's motion under Rules 12(b)(1) and 12(b)(6).

[3] Specifically, the Indemnity Agreement was entered into between plaintiff and 1) Sidney B. Dunmore; 2) Sid Dunmore Trust Dated February 28, 2003; 3) Sidney B. Dunmore, as Trustee for the Sid Dunmore Trust Dated February 28, 2003; and 4) DHI Development, a California Corporation. (Def.'s RJN, Ex. 4.) The Indemnity Agreement was made in consideration for plaintiff issuing bonds on behalf of "Dunmore Homes, a California Corporation, and its related affiliates and subsidiaries." (<u>Id.</u>) The court assumes that Dunmore Croftwood, LLC is one of these affiliated parties.

2

to indemnity for payments made to claimants of the bonds issued on behalf of Dunmore. (Id.)

After execution of the Indemnity Agreement, Dunmore entered into an agreement with the City of Rocklin whereby Dunmore agreed to install and complete certain public improvements at a 156-acre lot near Rocklin, California ("Rocklin Project"). (Troughton Decl. in Supp. of Def.'s MTD ("Troughton Decl."), filed March 26, 2008, Exs. 1-6.) Under the terms of its agreement with the City of Rocklin, Dunmore was required to have both performance bonds and payment bonds issued on its behalf. (Troughton Decl., Exs. 1-6.) Accordingly, on May 19, 2006, plaintiff issued three performance bonds and three payment bonds on behalf of Dunmore. (Id.) The performance bonds guaranteed the completion of the Rocklin Project to the City of Rocklin, while the payment bonds guaranteed payment to parties providing labor at the Rocklin Project. (Id.) The six bonds were classified under three separate bond numbers, with each bond number containing one payment bond and one performance bond in equal amounts: Bond No. 104705146 ("146") included one performance bond and one payment bond for $1,006,674.00 each; Bond No. 104705147 ("147") included one performance bond and one payment bond for $2,793,931.25 each; and Bond No. 104705148 ("148") included one performance bond and one payment bond for $1,650,673.20 each. (Id.)

In order to finance the Rocklin Project, Dunmore entered into a loan agreement with defendant in which defendant was to arrange financing for Dunmore in the amount of $33,973,331.00. (Pl.'s Compl., filed Feb. 19, 2008, Exs. 1-3). In order to effectuate the loan to Dunmore, defendant entered into three "Set

3

Aside Agreements" with plaintiff. (Id. at ¶ 6.) Each Set Aside Agreement provided that defendant was to establish a "bonded sitework improvement category" (a "category")--in essence, a separate fund of money--relating to "a bond" executed by plaintiff on behalf of Dunmore. (Id. at Exs. 1-3). The bond referred to in the first Set Aside Agreement is Bond No. 146, the bond referred to in the second Set Aside Agreement is Bond No. 147, and the bond referred to in the third Set Aside Agreement is Bond No. 148.[4]

The funds in the categories were to be made immediately available to plaintiff if Dunmore defaulted in the performance and/or payment requirements[5] of the bonds referenced in the Set Aside Agreements, subject only to statutory requirements for defendant to hold the funds. (Id. at Exs. 1-3.) The Set Aside Agreements were created to induce plaintiff to issue the bonds on behalf of Dunmore by providing a mechanism for plaintiff to be compensated if it was obligated to pay claims made on the bonds referenced in the Set Aside Agreements. (Id. at ¶ 7.)

---

[4] The bonds referenced in the Set Aside Agreements are not identified by an official bond number. (Pl.'s Compl., Exs. 1-3.) However, the parties do not dispute that the bonds referenced in the Set Aside Agreements are Bond Nos. 146, 147, and 148. Furthermore, the value of the bonds listed in the three Set Aside Agreements matches the value of Bond Nos. 146, 147, and 148, respectively. Also, the Set Aside Agreements and Bond Nos. 146, 147, and 148 all state they are related to the Rocklin Project.

[5] Plaintiff contends that the Set Aside Agreements refer to both the payment bonds and performance bonds attached to Bond Nos. 146, 147, and 148. (Pl.'s Opp'n to MTD 6:17-8:3.) Defendant, on the other hand, contends that the Set Aside Agreements refer only to the performance bonds attached to Bond Nos. 146, 147, and 148. (Def's. Mem. and P. & A. in Supp. of MTD 7:11-8:8.) Since this court stays the present action, this dispute need not be resolved on the instant motion.

4

The Set Aside Agreements relating to Bond Nos. 146 and 147 initially established categories for amounts of $1,006,674.00 and $2,793,931.25, respectively--the same value of Bond Nos. 146 and 147, respectively. (Id.) The Set Aside Agreement relating to Bond No. 148 initially established a category in the amount of $952,331.00, $698,342.20 less than the value of Bond No. 148. (Id.) As of November 8, 2007, the category established for Bond No. 146 had $233,974.66 remaining; the category established for Bond No. 147 had $1,094,518.40 remaining; and the category established for Bond No. 148 had $95,233.10 remaining. (Id. at ¶ 9.) The combined total of the remaining funds is $1,423,726.16. (Id.)

Beginning on or about June 1, 2006, Dunmore began entering into agreements with various subcontractors, including Cal Sierra Construction, Inc. ("Cal Sierra") and Desilva Gates Construction, L.P. ("Desilva"), to perform portions of the labor at the Rocklin Project. (Def.'s RJN, Exs. 1-2.) After the improvements began, both Cal Sierra and Desilva claimed that Dunmore failed to provide payment for the work each performed at the Rocklin Project. (Id.)

**2.   Claims by Parties Involved With the Rocklin Project**

Dunmore's alleged default triggered two separate state court actions and two separate federal court actions involving, in one way or another, plaintiff, defendant, Dunmore, Cal Sierra, and Desilva.[6] First, in September of 2007, Cal Sierra brought an

---

[6] In addition, Dunmore filed for Chapter 11 Bankruptcy in the Bankruptcy Court for the Southern District of New York. The bankruptcy proceeding was transferred to this district in January of 2008.

5

1 action in Placer County Superior Court against Dunmore,
2 defendant, and four others to recover $2,368,622.25 it alleges is
3 owed for work performed at the Rocklin Project. (Def.'s RJN, Ex.
4 1.) Cal Sierra asserted four claims for relief: 1) breach of
5 contract; 2) foreclosure of mechanic's lien; 3) unjust
6 enrichment; and 4) account stated. (Id.) All four claims were
7 asserted against Dunmore, while only the claim to foreclose on
8 the mechanic's lien was asserted against defendant. (Id.) In
9 January of this year, Cal Sierra filed an amended complaint to
10 add a claim against defendant to enforce a bonded stop notice[7] in
11 the amount of $2,368,622.25. (Id. at Ex. 3.)

12 In November of 2007, Desilva brought an action against
13 Dunmore and defendant to recover $671,200.72 Desilva alleges it
14 is owed for work performed at the Rocklin Project. (Id. at Ex.
15 2.) In its complaint, Desilva asserted four claims for relief:
16 1) breach of contract (against Dunmore); 2) common counts
17 (against Dunmore); 3) foreclosure of mechanic's lien (against
18 Dunmore and defendant); and 4) enforcement of a bonded stop
19 notice in the amount of $625,272.42 (against defendant). (Id.)

20 Also in November of 2007, plaintiff brought a separate
21 federal court action in this district against parties related to

---

[7] The enforcement of bonded stop notices in California is governed by California Civil Code section 3159, *et seq*. "These provisions enable the contractor to require a construction lender to withhold funds from the construction loan account to pay for uncompensated work performed on the project." North Bay Const., Inc. v. City of Petaluma, 143 Cal. App. 4th 552, 562 (2006).

6

1  Dunmore.[8]  (Id. at Ex. 4.)  Pursuant to the Indemnity Agreement,
2  plaintiff sought to recover losses it had incurred from paying
3  claims on bonds issued by plaintiff on behalf of Dunmore.  (Id.)
4  As part of its action against Dunmore, plaintiff provided the
5  court with a list of claims made on bonds issued by plaintiff on
6  behalf of Dunmore.  (Id.)

7  On January 17, 2008, plaintiff sent three written demands to
8  defendant to disburse the remaining balance of the three
9  categories.  (Pl.'s Compl., Exs. 4-6.)  Defendant refused to
10 disburse the remaining funds.  (Id. at ¶ 19-20.)  On February 19,
11 2008, plaintiff brought the present action against defendant.[9]
12 Plaintiff asserted claims for 1) breach of contract;
13 2) conversion; and 3) declaratory relief to recover the
14 undisbursed funds in the categories.  (Id. at ¶¶ 24,32,50.)
15 Plaintiff also brought a claim for subrogation to recoup money it
16 had paid to claimants involved with the Rocklin Project.  (Id. at
17 ¶¶ 44-45.)

**STANDARD**

19 Based on the aforementioned facts, defendant contends that
20 this case should be stayed or dismissed pursuant to the
21 abstention doctrine[10] set forth by the United States Supreme

---

[8] Specifically, the named defendants were Sidney B. Dunmore; Sid Dunmore Trust dated February 28, 2003; Sidney B. Dunmore as Trustee for Sid Dunmore Trust Dated February 28, 2003; and DHI Development, a California Corporation.

[9] Jurisdiction was founded solely on diversity of citizenship pursuant to 28 U.S.C. § 1332.

[10] "The Colorado River doctrine is not technically an abstention doctrine; therefore a district court's decision declining to exercise federal jurisdiction pursuant to Colorado River is more properly referred to as a stay or dismissal, as the

7

Court in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976). This doctrine provides that in the presence of a concurrent state court proceeding, a federal court can abstain from hearing an action based on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Id.</u> at 817.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id.</u> at 813. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" <u>Id.</u> at 817 (quoting <u>McClellan v. Carland</u>, 217 U.S. 268, 282 (1910)). Therefore, the application of the <u>Colorado River</u> doctrine can be justified "only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." <u>Id.</u> at 813 (internal quotations omitted). As such, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited," though these circumstances "do

---

case may be." <u>Smith v. Cental Az. Water Conservation Dist.</u>, 418 F.3d 1028, 1032 n.4 (9th Cir. 2005) (internal quotations omitted). The Ninth Circuit advocates that district courts should issue a stay instead of dismissing an action: "A stay, like a dismissal, avoids the waste of judicial resources from duplicative litigation in two courts." <u>Attwood v. Mendocino Coast Dist. Hosp.</u>, 886 F.2d 241, 244 (9th Cir. 1989). However, "unlike a dismissal, a stay avoids the risk that the federal plaintiff will be time-barred from reinstating the federal suit. In this way, a stay will effectively conserve court resources while avoiding premature rejection of the litigants' access...to a federal forum." <u>Id.</u> (internal quotations omitted).

nevertheless exist." Id. at 818.

The Supreme Court has set forth various factors that a district court should consider when assessing the appropriateness of a stay or dismissal in light of concurrent state court proceedings. These factors include (1) assumption by either court of jurisdiction over the res or property at dispute in the lawsuit; (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums. Id. at 818. In Moses H., the court also found relevant to the inquiry (5) whether federal law provides the decision on the merits, and (6) the probable inadequacy of the state court proceeding to protect the parties' rights. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23, 26 (1983). Further, the Ninth Circuit has recognized that forum shopping can in some cases justify Colorado River abstention. Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 297 (9th Cir. 1996) (citing Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir. 1990)). However, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Id. at 818-19 (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)). The factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H., 460 U.S. at 21.

///

///

**ANALYSIS**

**1.   Parallel Litigation**[11]

Even though different parties are involved, the state court actions brought by Cal Sierra and Desilva and the action brought here by plaintiff constitute parallel litigation for purposes of the Colorado River doctrine.  Exact parallelism is not required for the Colorado River doctrine to apply.  Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).  "It is enough if the two proceedings are 'substantially similar.'"  Id.; Quackenbush, 87 F.3d at 297 (abstention appropriate under Colorado River doctrine even though plaintiff in federal action claimed it was no longer party to state proceeding).  A proceeding is substantially similar if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum."  Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988).

In this case, while the parties have not expressly discussed the similarity of the actions under the parallel litigation requirement, they do vigorously dispute whether the remaining funds in the categories are the same funds sought by Cal Sierra and Desilva from defendant in their respective state court actions.  Plaintiff contends that only a fraction of the funds, if any, in the categories from the Set Aside Agreements are the

---

[11] The court notes that neither plaintiff nor defendant explicitly addresses whether the state court actions and this action are parallel.  See Moses H., 460 U.S. at 15 ("...[T]he decision whether to dismiss a federal action because of *parallel state-court litigation* does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.") (emphasis added).

same funds sought by Cal Sierra and Desilva against defendant in state court. (Pl.'s Opp'n to MTD 5:19-6:12.) As proof, plaintiff references the list of claims on bonds issued by plaintiff that it provided to this court in its separate action against Dunmore. That list shows that, of the three bonds related to the Set Aside Agreements, only Bond No. 148 was listed as having a claim against it. (Id. at 5:19-23.) That claim was made by Desilva for $625,272.42, the same amount as the bonded stop notice that Desilva seeks to enforce against defendant in state court. (Id. at 5:22; Def.'s RJN, Ex. 2.) Plaintiff further notes that only $95,233.10 remained in the category related to Bond No. 148.

Cal Sierra also made a claim on a bond issued by plaintiff related to the Rocklin Project. (Def.'s RJN, Ex. 4.) That bond, however, was identified with a different bond number than Bond Nos. 146, 147, and 148. (Pl.'s Opp'n to MTD 5:4-8.) This leads plaintiff to conclude that, at most, $95,233.10 of the $1,423,726.16 remaining in the three categories is a portion of the same money sought by Cal Sierra and Desilva against defendant in state court. (Id. at 5:19-6:12.) Accordingly, plaintiff contends that, at a minimum, 93% of the funds remaining in the three categories are unrelated to the claims made by Cal Sierra and Desilva against defendant in state court. (Id.)

Plaintiff's contentions, however, ignore other facts about the state court claims made by Cal Sierra and Desilva. They also contradict other statements made *by plaintiff* in this action. For instance, in its opposition, plaintiff states that it has expended $2,637,772.32 in satisfying claims pursuant to bonds

11

1  related to the Set Aside Agreements.  (Pl.'s Opp'n to MTD at
2  13:4-5.)  Additionally, plaintiff stated in Dunmore's bankruptcy
3  proceeding that Cal Sierra's bond claims on the Rocklin Project
4  arose under Bond Nos. 146, 147, and 148 for $16,357.76,
5  $970,741.36, and $979,472.48, respectively.  (Reply RJN in Supp.
6  of MTD ("Reply RJN"), filed May 2, 2008, Ex. 2.)  The total of
7  those three bond claims is $1,966,571.60, $1,871,338.50 *more* than
8  what plaintiff contends is the amount of funds in the categories
9  also sought by Cal Sierra and Desilva in their state court
10 actions against defendant.

11      Moreover, when $1,966,571.60 is added to $671,200.72--the
12 amount Desilva claims in its state court action that it has not
13 been paid--a sum of $2,637,772.32 is reached.  This is the *exact*
14 amount plaintiff stated in its opposition was expended in
15 satisfying claims pursuant to bonds *related* to the Set Aside
16 Agreements.  (Pl.'s Opp'n to MTD 13:4-5.)

17      Finally, in addition to all of the foregoing, plaintiff's
18 counsel stated in a letter to defendant's counsel dated April 4,
19 2008, that plaintiff had made payment on 1) Bond No. 146 to Cal
20 Sierra in the amount of $16,357.76; 2) Bond No. 147 to Cal Sierra
21 in the amount of $970,741.36; 3) Bond No. 148 to Cal Sierra in
22 the amount of $979,472.48; and 4) Bond No. 148 to Desilva in the
23 amount of $671,200.72.  (Reply RJN, Ex. 4.)  The sum of these
24 payments also equals $2,637,772.32.  Accordingly, despite
25 plaintiff's contentions to the contrary, the money remaining in
26 the categories of the three Set Aside Agreements that plaintiff
27 seeks in this action is the same money that Cal Sierra and
28 Desilva seek to recover from plaintiff for their claims on Bond

1  Nos. 146, 147, and 148.  Therefore, the court finds that the
2  money sought by plaintiff here is for the same recovery that Cal
3  Sierra and Desilva seek from defendant in their respective state
4  court actions.

5       In sum, the money sought by Cal Sierra and Desilva in their
6  state court actions involves the same money plaintiff seeks to
7  recover from defendant in this action.  In both cases, that money
8  is sought to compensate Cal Sierra and Desilva for money that
9  Dunmore has allegedly defaulted in paying for work at the Rocklin
10 Project.  The only difference is that Cal Sierra and Desilva seek
11 the money directly from defendant in the state court actions,
12 while in the present action, the money would pass from defendant
13 to Cal Sierra and Desilva through plaintiff.  That difference,
14 however, does not affect whether the state court actions and this
15 action constitute parallel litigation under Colorado River.

16      For the reasons stated above, the state court actions and
17 this action are substantially similar and constitute parallel
18 litigation under the Colorado River doctrine.  Accordingly,
19 having made that preliminary finding, the court next turns to the
20 factors promulgated in Colorado River and its progeny.

21 **2.   The Colorado River Factors**

22      Initially, the court notes that inconvenience of the federal
23 forum is not an issue here.  Plaintiff is a party to another
24 action in this district, while defendant is a party to two state
25 court actions pending within this judicial district.

26      Defendant contends that the first factor, jurisdiction over
27 the res, weighs in favor of this court granting a stay because
28 the two state court actions involve foreclosure of a mechanic's

13

1 lien.  To support this argument, defendant cites to California
2 case law, asserting that in California, "[a]n action to foreclose
3 a mechanics' [sic] lien, like a mortgage foreclosure, is an in
4 rem action and is local in nature."  <u>Central Bank v. Superior</u>
5 <u>Court</u>, 30 Cal. App. 3d 913, 917 (1973).  This statement of the
6 law is not incorrect, but it is incomplete and misleading.  In
7 the same paragraph cited by defendant, the court in <u>Central Bank</u>
8 goes on to state that "where the main relief sought is personal,
9 the fact that title or possession of real property is
10 incidentally involved does not change its character as a
11 *transitory* action."  <u>Id.</u> (emphasis added).  In holding that the
12 action before it was transitory and not in rem, the <u>Central Bank</u>
13 court noted that the plaintiff in its action "does not seek,
14 merely, to foreclose a mechanics' [sic] lien; [plaintiff's] real
15 objective is to recover a money judgment."  <u>Id.</u>

16 Similarly here, in their state court actions, Cal Sierra and
17 Desilva seek to recover money allegedly owed for work done on the
18 Rocklin Project.  (Def.'s RJN, Exs. 1-2.)  Foreclosure of a
19 mechanic's lien is only incidental to that recovery.
20 Accordingly, like in <u>Central Bank</u>, the state court actions
21 brought by Cal Sierra and Desilva are not in rem for the purposes
22 of the <u>Colorado River</u> doctrine.[12]

23 However, that this case does not involve an in rem action is
24 not dispositive of the propriety of abstention.  Even when a

---

[12] Such a holding is consistent with the Supreme Court's guidance in <u>Colorado River</u> itself, where the Court stated that federal court jurisdiction should be "yielded to the court first acquiring control of property" in order to avoid "inconsistent dispositions of *property*."  <u>Colorado River</u>, 424 U.S. at 819 (emphasis added).

14

state court does not assume jurisdiction over property, courts have often dismissed or stayed an action under Colorado River. See Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1257-1258 (9th Cir. 1988) (abstention proper when both state and federal claims alleged breach of obligations under same insurance policies); Nakash, 882 F.2d at 1415 n.6 (abstention proper when both state and federal claims involved dispute over stock purchase agreement); Quackenbush, 87 F.3d at 297-298 (abstention proper when both state and federal actions challenged constitutionality of insurance regulations).

Furthermore, other district courts have stayed cases involving construction and bond-payment disputes, even though the state court did not assume jurisdiction over any property. See U.S. for Use and Benefit of Arrow Concrete v. Ohio Farmers Ins. Co., 981 F. Supp. 443, 445 (S.D. W. Va. 1997) (abstention proper over subcontractor's claim against surety when contractor brought state action against subcontractor; both actions involved subcontractor's labor during construction of dam); Pace Constr. Co., Inc. v. Travelers Cas. & Sur. Co. of Am., 259 F. Supp. 2d 934, 938 (E.D. Mo. 2003) (abstention of federal action by subcontractor against surety proper when contractor and surety brought action against subcontractor in state court regarding same road construction project).  Similarly, a "careful balancing" of all the factors in this case weighs in favor of this court granting a stay.

The most significant of the remaining factors is the desirability of avoiding piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same

15

1  issue, thereby duplicating efforts and possibly reaching
2  different results."  Am. Int'l Underwriters, 843 F.2d at 1258.
3  The money sought by Cal Sierra and Desilva in their state court
4  actions against defendant involves the same money being sought by
5  plaintiff against defendant in this case.  In either case, the
6  money is intended to compensate Cal Sierra and Desilva for
7  payments that Dunmore has allegedly failed to make.  Plaintiff,
8  perhaps unintentionally, makes this very point in its opposition,
9  when it states it "does not seek to adjudicate mechanic's lien
10 claims standing in its own shoes, it seeks to adjudicate
11 mechanic's lien claims standing in the shoes of contractors and
12 subcontractors whose claims were satisfied by [plaintiff]."
13 (Pl.'s Opp'n to MTD 15:11-13.)  Accordingly, if an adverse
14 judgment is rendered against defendant in this action and in the
15 state court actions, defendant risks double liability.
16 Furthermore, if this court and the state courts were to rule
17 differently, defendant may face the possibility of inconsistent
18 judgments.

    Next, the order in which jurisdiction was obtained does not
weigh heavily for either party.  Although both state actions were
filed months before this action, "priority should not be measured
exclusively by which complaint was filed first, but rather in
terms of how much progress has been made in the two actions."
Moses H., 460 U.S. at 22.  In this case, only plaintiff's
complaint and defendant's motion to dismiss have been considered
by the court.  Cal Sierra's state court action against defendant
has progressed slightly further than this action; defendant has
filed a cross-complaint, the parties have begun discovery, and

16

defendant is contemplating filing a motion to consolidate the two state court actions and a motion for summary judgment. (Reply RJN, Ex. 6.) Desilva's state court action has not proceeded any further than this action. (Id.) Accordingly, although the state court actions, when analyzed together, may have advanced slightly farther than this action, this factor bares little weight.

Nonetheless, additional factors weigh in favor of this court granting a stay. For instance, the resolution of this dispute involves no federal law and would be resolved entirely on state law. Additionally, the state court proceedings can adequately protect the rights of plaintiff. Plaintiff states that if this action does not proceed, plaintiff will be prejudiced to the extent defendant "improperly distributes funds referenced in the Set Aside Agreements to compensate claimants for unbonded private work rather than public work." (Pl.'s Opp'n to MTD 17:3-5.) Plaintiff never states, however, how the improper distribution of funds by defendant is related to this action. Presumably, defendant could improperly distribute the funds regardless of this court's involvement since the court has no control over the funds. Moreover, plaintiff could seek to intervene in both state court actions, further demonstrating the ability of the state court to protect the rights of plaintiff. See Cal. Civ. Proc. Code § 387.

In sum, the court acknowledges that abstention under the Colorado River doctrine is a narrow exception, appropriate only in extraordinary circumstances. See Quackenbush, 87 F.3d at 297; O'Neill v. United States, 50 F.3d 677, 688 (9th Cir. 1995). Such extraordinary circumstances are present in this case; this action

17

and the two state actions are substantially similar, and a "careful balancing" of the Colorado River factors weighs strongly in favor of this action being stayed.

**CONCLUSION**

The Supreme Court has counseled that the Colorado River doctrine should be considered and applied "with a view to the realities of the case at hand." Moses H., 460 U.S. at 21. For the foregoing reasons, the reality of the situation demonstrates that this is an exceptional case justifying that this action be STAYED.

IT IS SO ORDERED.

DATED: June 13, 2008.

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE