UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

        Plaintiff,

    v.

COMERICA BANK,

        Defendant.
_____/

NO. CIV. S-08-366 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff Travelers Casualty and Surety Company of America's ("Travelers") motion to lift the stay of this action, entered by the court on June 13, 2008. For the reasons set forth below, Travelers' motion is DENIED.[1]

///
///
///

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

**BACKGROUND**

**A.   General Background Facts**

In December of 2005, Travelers entered into an indemnity agreement involving Dunmore Croftwood, LLC ("Dunmore") under which Travelers agreed to issue construction bonds on behalf of Dunmore guaranteeing the performance and payment obligations of Dunmore for improvement projects it undertook.  (Mem. and Order, filed June 13, 2008, at 2 [hereinafter, the "Order"].)  In return, Travelers was entitled to indemnity for payment made to claimants of bonds issued on behalf of Dunmore.  (Id. at 3.)

After execution of the Indemnity Agreement, Dunmore entered into an agreement with the City of Rocklin whereby Dunmore agreed to install and complete certain public improvements at a 156-acre lot near Rocklin, California ("Rocklin Project").  (Id.)  In order to finance the Rocklin Project, Dunmore entered into a loan agreement with defendant Comerica Bank ("Comerica") in which Comerica was to arrange financing for Dunmore in the amount of $ 33,973,331.00.  (Id.)  To induce Travelers to issue the payment and performance bonds on behalf of Dunmore, Comerica and Travelers entered into "Set Aside Agreements" whereby Comerica would create a separate fund of money related to "a bond" executed by Travelers on behalf of Dunmore.  (Id. at 4.)  The funds in the Set Aside Agreements were to be made immediately available to Travelers if Dunmore defaulted in the performance and/or payment requirements of the bonds referenced in the Set Aside Agreements, subject only to statutory requirements for Comerica to hold the funds.  (Id.)  Accordingly, on May 19, 2006, Travelers issued three performance bonds and three payment bonds

2

1  on behalf of Dunmore.  (Id. at 3.)

2      Beginning on or about June 1, 2006, Dunmore began entering
3  into agreements with various subcontractors, including Cal Sierra
4  Construction, Inc. ("Cal Sierra") and DeSilva Gates Construction,
5  L.P. ("DeSilva Gates"), to perform portions of the labor at the
6  Rocklin Project.  (Id. at 5.)  After the improvements began, both
7  Cal Sierra and DeSilva Gates claimed that Dunmore defaulted on
8  their agreements by failing to provide payment for the work each
9  performed at the Rocklin Project.  (Id.)

**B.   Procedural History**

    In November 2007, DeSilva Gates filed an action in state court against Comerica to recover $671,200.72 DeSilva Gates alleged it was owed for work performed at the Rocklin Project. (Id. at 6.)  In January 2008, Cal Sierra also filed suit against Comerica in state court asserting two claims for relief, including foreclosure of mechanics' lien and enforcement of a bonded stop notice[2] in the amount of $2,368,622.25.  (Id.) Pursuant to its rights under the Indemnity Agreement, on February 19, 2008, Travelers filed the instant complaint in this court against Comerica asserting: (1) breach of contract, (2) conversion, (3) subrogation, and (4) declaratory relief. (Compl. ¶¶ 21-52, filed February 12, 2008.)

---

[2]   The enforcement of bonded stop notices in California is governed by California Civil Code § 3159, *et seq*.  "These provisions enable the contractor to require a construction lender to withhold funds from the construction loan account to pay for uncompensated work performed on the project."  North Bay Const., Inc. v. City of Petaluma, 143 Cal. App. 4th 552, 562 (2006).

3

On June 13, 2008, the court stayed this action pursuant to the Colorado River doctrine. See also Colorado River West Conservation Dist. v. U.S., 424 U.S. 800 (1976). The court stayed the action because the two pending California state court actions by Cal Sierra and DeSilva Gates were sufficiently similar to the instant action to be considered "parallel litigation" under Colorado River. (Order at 10:2-13:16.) Specifically the court found that because "the money sought by [Travelers] here is for the same recovery that Cal Sierra and [DeSilva Gates] seek from [Comerica] in their respective state actions . . . the state court actions and this action are substantially similar and constitute parallel litigation under the Colorado River doctrine." (Order at 13:1-13:18.) Additionally, the court found several of the remaining Colorado River factors weighed strongly in favor of staying this action. (Id. at 13:21-18:3.) Particularly, the court found that a stay would avoid piecemeal litigation since an adverse judgment rendered against Comerica in both state and federal court could subject Comerica to the risk of double liability or inconsistent judgments. (Id. at 16.)

**C.   Cal Sierra Developments**

On July 25, 2008, Comerica moved for a decree to release Cal Sierra's mechanics' lien and bonded stop notice claim. (Travelers' Req. for Jud. Not. ["RJN"], filed June 1, 2009, at ¶ 2.) Subsequently, on August 15, 2008, Travelers moved to intervene in Cal Sierra's action against Comerica on the ground that Travelers is a real party in interest on a portion of the claims asserted by Cal Sierra, as suborgee and assignee. (Id. at ¶ 1; Ex. 7 to Travelers RJN.) On October 1, 2008, the state

4

court granted Comerica's motion to release Cal Sierra's mechanics' lien and bonded stop notice. (Ex. 9 to Travelers' Req. for Judicial Notice.) Consequently, on October 23, 2009, Travelers withdrew its motion to intervene. (Ex. A to Comerica's Req. for Jud. Not. ["RJN"], filed June 26, 2009.)

On December 10, 2008, Cal Sierra entered into a settlement agreement with Comerica wherein Cal Sierra agreed to dismiss, release and withdraw its mechanics' lien in exchange for $30,000.00 from Stewart Title Guarantee Company. (Colucci Decl. in Supp. of Mot. to Lift Stay ["Colucci Decl."], filed June. 1, 2009, at ¶ 13.) However, although the settlement agreement released Comerica from liability under the mechanics' lien, it did not preclude Cal Sierra from pursuing its stop notice claim against Comerica. (Ex. 4 to Colucci. Decl.) Accordingly, Cal Sierra withdrew the mechanics' lien against Comerica, and on December 15, 2008, it filed a notice of appeal as to the remainder of the state court action. (Travelers' RJN at ¶¶ 4-5.)

**D.   DeSilva Gates Developments**

On August 1, 2008, DeSilva Gates and Travelers entered into a settlement agreement, wherein DeSilva Gates assigned to Travelers its bonded stop notice claim in the amount of $625,272.42 asserted against Comerica. (Colucci Decl. at ¶ 15.) Based on Desilva Gates' assignment of its bonded stop notice to Travelers, Travelers' attorney was substituted as attorney of record for Travelers in the DeSilva Gates action. (Id. at ¶ 17.) Subsequently on December 18, 2008, DeSilva Gates entered into a settlement agreement with Comerica, wherein DeSilva Gates agreed to dismiss, release, and withdraw its mechanics' lien in exchange

for $20,000.00 from Stewart Title Guarantee Company.  (Id. at ¶ 18.)  The trial of the remaining claims, including the bonded stop notice, is set for September 28, 2009.  (Id. at ¶ 21.)

**STANDARD**

The Colorado River doctrine provides that in presence of a concurrent state court proceeding, a federal court can abstain from hearing an action based on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817.  The Supreme Court has set forth various factors that a district court should consider when assessing the appropriateness of a stay or dismissal in light of concurrent state court proceedings.  These factors include (1) assumption by either court of jurisdiction over the res or property at dispute in the lawsuit, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums.  Id. at 818.  In Moses H., the court also found relevant to the inquiry (5) whether federal law provides the decision on the merits, and (6) the probable inadequacy of the state court proceeding to protect the parties' rights.  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23, 26 (1983).  However, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."  Colorado River 424 U.S. at 818-19 (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).  The factors are "to be

applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H., 460 U.S. at 21.

**ANALYSIS**

**A.   Parallel Litigation**

The court previously held that even though different parties were involved, the state court actions brought by Cal Sierra and DeSilva Gates against Comerica and Travelers' instant action against Comerica constituted "parallel litigation," for purposes of the Colorado River doctrine, because the money sought by Travelers in this case is the same funds Cal Sierra and DeSilva Gates seek from Comerica in the state court actions. (Order 10:3-13:4.)  Exact parallelism is not required for the Colorado River doctrine to apply. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).  Rather, it is enough if the two proceedings are substantially similar, in that, "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988).  Travelers contends, however, that the circumstances which justified the court staying the action pursuant to the Colorado River doctrine have changed, and there is no longer grounds to support a stay.

More specifically, Travelers argues the Cal Sierra action can no longer serve as a basis for continuing the stay of this action because it has been "adjudicated."  However, although the state court granted Comerica's motion to release Cal Sierra's mechanics' lien and stop notice, Cal Sierra's stop notice claim against Comerica is currently on appeal before the state appellate court.  Therefore, *final* adjudication of the Cal Sierra

7

matter has not been rendered because the appellate court can reverse and/or remand Cal Sierra's claim, thereby mooting the developments subsequent to this court's entry of the stay.

Further, Travelers argues the DeSilva Gates action can no longer serve as a basis for continuing the stay because (1) the status of the litigation has changed with respect to the mechanics' lien, and (2) Travelers is now litigating the stop notice claim against Comerica, as assignee of DeSilva Gates.

First, the settlement agreement between DeSilva Gates and Comerica regarding the dismissal, release, and withdrawal of the mechanics' lien does not impact the court's finding of parallel litigation. Indeed, notwithstanding this court's decision on the instant motion, the state court trial on DeSilva Gates' bonded stop notice is set for September 28, 2009. Thus, lifting the stay would permit Travelers to attempt to recover on the bonded stop notice for DeSilva Gates against Comerica in this court and *concurrently* go to trial against Comerica, as assignee of DeSilva Gates, in state court. This is precisely the type of situation that the Colorado River doctrine is designed to prevent.[3]

Second, contrary to Travelers' suggestions, that Travelers is now litigating the stop notice claim against Comerica, as assignee of DeSilva Gates, further supports, not diminishes, a finding of parallel litigation. Travelers asserts the two

---

[3] In its reply, Travelers indicates that it would stipulate to the dismissal of its subrogation claims against Comerica in this action. However, there has been no such stipulation filed by the parties, and these claims remain presently pending. The court must consider the instant motion on the basis of the claims currently at issue, considering the state of the pleadings as they now exist.

8

1 actions are independent and different because this action
2 "involves different theories of liability and seeks different
3 relief." This argument is unpersuasive because both the state
4 court actions and this action seek the same money as recovery in
5 the suits. In both cases, money is sought by Travelers, Cal
6 Sierra, and DeSilva Gates from Comerica to compensate Cal Sierra
7 and DeSilva Gates for their bonded work. The only difference is
8 Cal Sierra and DeSilva Gates seek the money directly from
9 Comerica in the state court actions, while in this action, the
10 money would pass from Comerica to Cal Sierra and DeSilva Gates
11 through Travelers.

12 Accordingly, because none of the subsequent developments in
13 either of the two state court actions change the fact that those
14 actions and this action are substantially similar, the court
15 finds that the matters constitute parallel litigation under
16 Colorado River, thus supporting issuance of the stay.

**B.   The Colorado River Factors**

18 Initially, the court notes that because the circumstances
19 supporting issuance of the original stay have not significantly
20 changed, the Colorado River factors that were not particularly
21 material to the stay inquiry also remain unchanged, including:
22 the inconvenience of the federal forum, assumption of
23 jurisdiction over the res, and the order in which jurisdiction
24 was obtained. Further, the factors that weighed in favor of this
25 court granting a stay, such as the resolution of a dispute which
26 does not involve federal law and the adequacy of the state court
27 proceedings to protect the plaintiff's rights, remain valid.

1    Most significantly, as indicated in the court's previous
2 Order, the desirability of avoiding piecemeal litigation
3 overwhelmingly supports issuance of a stay.  "Piecemeal
4 litigation occurs when different tribunals consider the same
5 issue, thereby duplicating efforts and possibly reaching
6 different results."  <u>Am. Int'l Underwriters</u>, 843 F.2d at 1258.
7 In the Cal Sierra case, piecemeal litigation will occur if the
8 stay is lifted and the state appellate court reverses the trial
9 court's grant of Comerica's motion to release Cal Sierra's bonded
10 stop notice claim.  More apparent in the DeSilva Gates action, if
11 the stay is lifted, Travelers would be permitted to seek recovery
12 for DeSilva Gates in the state action in September 2009, while
13 concurrently attempting to recover the same funds in this federal
14 action.  Just as before, if an adverse judgment is rendered
15 against Comerica in this action and in the state court actions,
16 Comerica risks double liability.  Further, if this court and the
17 state courts were to rule differently, Comerica may face the
18 possibility of inconsistent judgments.  Therefore,
19 notwithstanding the subsequent developments in the Cal Sierra and
20 DeSilva Gates actions, the justifications for the issuance of the
21 initial stay of this action pursuant to <u>Colorado River</u> remain
22 valid.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For the foregoing reasons, Travelers' motion to lift the stay of this action is DENIED.

IT IS SO ORDERED.

DATED: July 15, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE